NORTHWESTERN MUTUAL INSUR-
ANCE COMPANY, a corporation,
Appellant,

v.

Milton MICHAELSON, Yetta Michaelson
and Niagara Fire Insurance Com-
pany, a corporation, Appellees.

No. 17747.

United States Court of Appeals
Ninth Circuit.

Sept. 6, 1963.

Bolton, Groff & Dunne, and Gene Groff, Los Angeles, Cal., for appellant.

Thomas P. Menzies and James O. White, Jr., Los Angeles, Cal., for appellee.

Before CHAMBERS, HAMLEY and MERRILL, Circuit Judges.

CHAMBERS, Circuit Judge.

The Michaelsons owned a building in Culver City, California. It burned up on July 17, 1959. It was stipulated by all the parties that the loss was $16,000. It is fair to say the risk was a poor one. A few years before, Travelers Insurance Co. had paid a fire loss there and decided it wanted no more of the risk. Apparently Northwestern was the next company to carry the risk, issuing a policy in the amount of $19,000.

Some days before the fire, Northwestern notified its agent, Ernest Peters, that it wanted off the risk and desired to cancel the policy. The Michaelsons were customers of Peters, who was also an agent for the appellee Niagara. After receipt of the advice (but still before the fire), and with the Michaelsons' consent, Peters issued what in the trade is called a "binder" for $19,000 of insurance with Niagara. For short, a binder may be described as "temporary insurance." On July 16, 1963, Niagara wrote Peters that it would accept the risk only for $9,500. The notice was not received until after the fire.

. The trial court has determined that each company had insurance in the amount of $19,000 in effect and that the loss should be borne equally by Niagara and Northwestern. Northwestern appeals. Niagara has not appealed, and, indeed, at the trial seems to have made no contention that it had no insurance in

effect.[1] The only question here then is, "Did Northwestern have its policy in effect?" We shall not cite authorities on not setting aside findings of a trial court unless clearly erroneous, because we fail to find any seriously disputed facts. We affirm because we believe the trial court was correct. And, of course if Northwestern had its policy in effect, it cannot complain that the court imposed half of the loss on Niagara.

Appellant believes that the Michaelsons cancelled the Northwestern policy by acceding to Peters' offers to get other insurance and by Peters taking the initial steps to get it. It is true that Michaelson testified he didn't intend to have two policies in effect and Peters similarly testified. But the story taken as a whole is susceptible of the inferences that Peters intended to take care of the cancellation of the Northwestern policy by returning the policy—in the face of threatened cancellation by Northwestern. In the vernacular, he was stalling for time. The failure of Peters or Michaelsons to return the policy leads one to think Peters was trying to get for Michaelsons definite insurance for a term, something more than a binder, before voluntarily letting go of the Northwestern policy.

Taking the testimony as a whole, we think the trial court was justified in finding the Northwestern policy was in force on July 17, 1959, and that it had not been cancelled. Appellant bears down too hard, we think, on part of the testimony on the isolated admissions of subjective intent of Peters and Michaelson not communicated to anyone. The whole testimony is subject to the conclusion that Michaelsons and Peters would voluntarily (but in the context of a threat to cancel) substitute the new insurance when the problem was more than temporarily solved. We just cannot clear a windfall for Northwestern on the basis that the temporary binder had been obtained.

There is no basis for any contention that the Northwestern policy was unilaterally and effectively cancelled by Northwestern as it had a right to do on certain conditions.

On July 15, 1959, Northwestern sent a notice to the mortgagee, Bank of America, as follows:

"You are hereby notified, in accordance with the policy conditions, of the cancellation of Mercantile Policy No. 1003–8589, issued to Milton Michaelson, Yetta Michaelson, loss, if any, payable to Bank of America National Trust & Savings written for a term of 3 years from May 13, 1958, and that *10 days* from the date of service of this notice, at 12:00 o'clock noon, standard time, this policy will stand cancelled without further notice, and thereafter be null and void and no liability will exist thereunder; and, at 12:00 o'clock noon, standard time, ten days from date of service of this notice on the mortgagee or loss payee, if any, the mortgage or loss payable agreement, if any, will stand canceled without further notice, and thereafter be null and void and no liability will exist thereunder. * * *"
(Emphasis on "10 days" supplied.)

(It should be noted that the foregoing notice does not purport to say that "the policy is cancelled now as to Michaelsons and ten days hereafter as to Bank of America.")

A similar notice on the same day, July 15, 1959, was sent to Michaelsons as follows:

"You are hereby notified, in accordance with the policy conditions, of the cancellation of Mercantile Policy No. 1003–8589, issued to above assured, loss, if any, payable to Bank of America National T & Svgs. written for a term of 3 years from May 13, 1958, and that *5 days* from the date of service of this notice, at 12:00 o'clock noon, standard time,

1. For some reason no pre-trial order in the case was ever entered. In their orig-inal answers to Michaelson's complaint, both companies denied liability.

this policy will stand canceled without further notice, and thereafter be null and void and no liability will exist thereunder; and, at 12:00 o'clock noon, standard time, *ten days* from date of service of this notice on the mortgagee or loss payee, if any, the mortgage or loss payable agreement, if any, will stand canceled without further notice, and thereafter be null and void, and no liability will exist thereunder. * * " (Emphasis on "5 days" and "ten days" supplied.)

The foregoing notice is, obviously, the same as the other one except it recites the effective date as five days as to Michaelsons and ten days as to the mortgagee, Bank of America.

■ Out of the notices we can conclude that there is just no basis for any contention that prior to the fire of July 17 the parties had cancelled the Northwestern policy by mutual agreement. The parol evidence rule surely is applicable.

It is not necessary to rely on any rights of the Bank of America to buttress up the position of Michaelsons. Northwestern itself, as to Michaelson, chose five days. Within five days the loss had occurred.

■ "But," says Northwestern, "the Northwestern policy was cancelled by the substitution of insurance." This we cannot accept. We have examined all of the cases cited and others. We are mindful that California law governs. Without compelling California authority, we are unwilling to include within the principle of substitution a temporary binder where there is no showing that the new company for the projected term had unqualifiedly "bought" the risk and, indeed, Niagara only accepted it conditionally and partially on July 15, 1959, notice thereof being received after the fire.

While the facts are distinguishable, we think the principles announced in Glens

Falls Insurance Co. v. Founders Insurance Co., 209 Cal.App.2d 157, 25 Cal.Rptr. 753, reinforce our conclusions in the instant case.[2] Probably the case most nearly in point is Apparel Manufacturers' Supply Co. v. National Auto & Casualty Co., 189 Cal.App.2d 443, 11 Cal.Rptr. 380.

If there was more than the transitory temporary liability of the binder, then the case would be far different. But we think there ought to be a little order in the withdrawal of liability.

Northwestern had absolute rights to get off the policy on notice irrespective of whether Michaelsons could get any other insurance. This it was attempting to do. We leave it on the ground it chose at the time.

Judgment affirmed.

---

2. Appellant's counsel here cite the Glens Falls case, supra, which they themselves won in a California District Court of Appeal. That we should rely on it here as against them is a little grim.