**The POTOMAC INSURANCE COMPANY, Appellant,**

v.

**MOTORIST MUTUAL INSURANCE COMPANY, Appellee.**

**MOTORIST MUTUAL INSURANCE COMPANY, Cross-appellant,**

v.

**The POTOMAC INSURANCE COMPANY, Cross-appellee.**

Court of Appeals of Kentucky.

Dec. 28, 1979.

As Modified On Denial of Rehearing Feb. 29, 1980.

Discretionary Review Denied May 29, 1980.

W. R. Patterson, Jr., Lexington, for appellant/cross-appellee.

James D. Ishmael, Jr., Herbert D. Sledd, Lexington, for appellee/cross-appellant.

Before HAYES, HOWARD and VANCE, JJ.

VANCE, Judge.

The question is whether the issuance of an insurance policy by one company covering loss by fire effects a cancellation of a written binder previously issued by another company on the same property when it is agreed the owner did not intend to have duplicate coverage. We hold that it does.

In April 1977, Robert Ferguson and James Hinkle, partners in a sporting goods business known as Winchester Sports Center, began construction of a new building for the business. Before construction commenced Ferguson obtained a builder's risk policy, cancellable upon completion of the building, from John Nunan, an agent for appellant Potomac Insurance Company.

The store opened for business on October 13, 1977. The next day Nunan suggested to Ferguson that the builder's risk policy should be changed to a permanent policy of fire and comprehensive insurance. Because the owners had several friends in the insurance business and did not want to show favoritism toward any of them, they decided to solicit bids and award the permanent insurance to the best bid. In the meantime Nunan verbally bound coverage by Potomac to the extent of $200,000.00 on the building and $150,000.00 on the contents. A written binder was later issued by Potomac effective from October 19, 1977, to November 18, 1977. A second binder was issued extending coverage to December 18, 1977.

Bids were received from several insurance agents, including one fron Nunan, representing Potomac, and one from Lowell Carter representing appellee, Motorist Mutual Insurance Company. The owners decided to insure with Motorist Mutual and an application was submitted to that Company. The application was approved by Motorist Mutual on December 1, 1977, but the owners were not informed of the acceptance and approval until after a fire had destroyed the building on December 14, 1977.

Immediately after the fire, with both the owners and the agent for Potomac unaware that a permanent policy issued by Motorist Mutual was in effect, Nunan told the owners that they were covered by the binder. When it was discovered the next day that the Motorist Mutual policy was in effect with coverage of $200,000.00 on the building and $175,000.00 on the contents, Nunan claims he told the owners that Potomac would probably consider their binder nullified by the purchase of the other permanent insurance from Motorist Mutual.

Motorist Mutual paid the owners approximately one-half of the loss and demanded

that Potomac pay the other half. Relying upon the doctrine of "cancellation by substitution" Potomac contended that its binder was cancelled when the owners secured permanent coverage with Motorist Mutual. Potomac therefore denied liability and this litigation ensued.

The trial court entered summary judgment refusing to recognize the doctrine of "cancellation by substitution" and holding Potomac liable on its policy.

The parties seemingly agree that the issue presented is one of first impression and that other jurisdictions have divided on the issue. Motorist Mutual asserts that the modern trend of the law is to reject the doctrine of cancellation by substitution citing *Glens Falls Ins. Co. v. Founders' Ins. Co.*, 209 Cal.App.2d 157, 25 Cal.Rptr. 753, 3 A.L.R.3d 1058 (1962). The California court held therein that the mere procurement of substitute insurance from a second insurer with an intent to replace the first insurer's policy did not, of itself, constitute a cancellation of the first policy because cancellation by substitution required notice of cancellation to the first insurer or agreement to cancel between the owner and the insurer. Neither of those items was present here.

The owners did not notify Potomac to cancel the binder because at the time of the fire they did not know that the other insurance had been issued by Motorist Mutual, nor was there any agreement between the company and the insured to cancel the binder.

While it is true that a binder is, in effect, a policy of insurance it has a distinguishing characteristic in that a binder is generally issued as a temporary arrangement to provide immediate coverage until a permanent policy can be obtained. By its very nature a binder contemplates temporary coverage which will cease when permanent coverage is obtained.

All parties here agree that the owners did not intend to have duplicate coverage. Although the binder was issued for a specific period of time which had not ex-pired when the fire occurred, it was issued nevertheless as a stop-gap measure simply to provide coverage while the owners were negotiating for permanent coverage.

Our determination that a binder is a form of temporary insurance to be extinguished when a permanent policy is issued is reinforced by KRS 304.14–220 which provides:

(1) Binders or other contracts for temporary insurance may be made orally or in writing, and shall be deemed to include all the usual terms of the policy as to which the binder was given . . .
(2) No binder shall be valid beyond the issuance of the policy with respect to which it was given, or beyond ninety (90) days from its effective date, *whichever period is the shorter.* (Emphasis ours.)

Our decision makes it unnecessary to decide the issues raised on the cross-appeal.

The judgment is reversed for further proceedings and the entry of a judgment not inconsistent with this opinion.

All concur.