**GENERAL ACCIDENT INSURANCE COMPANY OF AMERICA,**
**Appellant,**

**v.**

**Betty GUESS, by and Through Her Estate Administrator and Personal Representative; Linford Guess, and Linford Guess, Individually; Marcus R. Harris, Administrator of the Estate of Marilyn M. Harris, Deceased; Marcus R. Harris, Individually; Keiana Sheree Harris, Infant Child, by her Next Friend, Marcus R. Harris; and Shanelee Lashea Harris, Infant Child, by Her Next Friend, Marcus R. Harris, Appellees.**

No. 95–CA–002068–MR.

Court of Appeals of Kentucky.

Jan. 3, 1997.

Gregory J. Berberich, Freund, Freeze, & Arnold, Cincinnati, OH, for Appellant.

Len W. Ogden, Jr., Paducah, for Appellee, Marcus R. Harris.

William F. McGee, Jr., Smithland, for Appellee, Betty Guess.

Before GARDNER, JOHNSON and KNOPF, JJ.

JOHNSON, Judge:

General Accident Insurance Company of America (General Accident) appeals from two separate orders of the Livingston Circuit Court denying its motion for summary judgment and granting partial summary judgment in favor of the appellees, Betty Guess, by and through her Estate Administrator and Personal Representative, Linford Guess (Guess), and Marcus R. Harris, Administrator of the Estate of Marilyn M. Harris, deceased (Harris), on their claim against General Accident.[1] We affirm.

Marcus and Marilyn Harris (the Harrises) maintained automobile insurance with General Accident on three vehicles, including a 1984 Pontiac (the General Accident policy). General Accident offered to renew coverage on the three vehicles for a period beginning on February 8, 1994, and ending on August 8, 1994, with the renewal premium being due on February 8, 1994. When the Harrises informed General Accident that they wished to add a fourth vehicle to the policy and advised it of changes in the use of a vehicle which was already covered under the policy, the premium due date was extended to April 17, 1994. Under the terms of the General Accident policy, the limit of underinsured motorist coverage for each vehicle was a single limit of $60,000, or a total of $240,000 if stacked.

On February 16, 1994, GEICO General Insurance Company (GEICO) issued a "binder" (the GEICO binder) providing coverage on the 1984 Pontiac and another vehicle, both of which were already covered by the General Accident policy. The GEICO binder was to provide temporary coverage from February 16, 1994, to March 19, 1994, and provided:

> The insurance provided to you by this letter is a "binder" of coverage. This binder provides protection for the period of time shown above to allow you to complete and return your application, to allow us to review your application, and to have your vehicle(s) inspected in accordance with the attached notice.

Under the terms of the GEICO binder, underinsured motorist coverage was provided for both vehicles in the amounts of $25,000 per vehicle or $50,000 if stacked.

On March 2, 1994, Marilyn Harris and Betty Guess were killed in a motor vehicle accident while riding in the 1984 Pontiac being driven by Harris. On April 14, 1994, Harris' attorney paid the renewal premium for the General Accident policy. Thus, both the General Accident policy and the GEICO binder were in full force and effect on the date of the accident.

Harris and Guess filed separate wrongful death actions arising from the accident naming General Accident and GEICO as defendants. The cases were consolidated at General Accident's request. Harris, Guess, and GEICO were able to reach a settlement, and GEICO was released from the case.

■ General Accident filed a motion for summary judgment alleging that there was no coverage on the 1984 Pontiac under the General Accident policy at the time of the accident. In support of its argument, General Accident relied on a clause in the General Accident policy, which provided:

> C. Automatic Termination. * * *
>
> If you obtain other insurance on "your covered auto," any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance.

General Accident argued that under this provision its coverage on the 1984 Pontiac was terminated when GEICO issued its binder which provided coverage for the same auto. The trial court denied General Accident's motion for summary judgment, stating:

---

1. The appellees will be referred to collectively as Harris unless context requires otherwise.

The court finds that as a matter of public policy, a binder does not work to effect an automatic termination clause in an existing insurance policy and that the term "similar" is ambiguous, unduly vague and unenforceable.[2]

The trial court then entered partial summary judgment in favor of Harris and Guess, holding that: (1) the General Accident policy was in full force on the date of the accident; (2) the underinsured motorist coverage of the General Accident policy was available to satisfy any claims for damages in excess of the amount received from the insurance carrier of the other driver; and (3) the underinsured motorist limits for each of the four Harris vehicles under both the General Accident policy and the GEICO binder could be stacked to the extent necessary to compensate the estates.

The parties entered into an agreed judgment on June 29, 1995, fixing the amount of damages awarded pursuant to the partial summary judgment entered in favor of Harris and Guess. However, pursuant to the terms of the agreed judgment, General Accident reserved the right to appeal from the trial court's order denying summary judgment and the trial court's order granting partial summary judgment in favor of Harris and Guess. This appeal followed.

The issue on appeal is whether the issuance of the GEICO binder terminated coverage for the 1984 Pontiac under the General Accident policy in accordance with its automatic termination clause. General Accident argues that the Harrises' purchase of the GEICO binder terminated coverage under its policy due to the unambiguous automatic termination clause contained in the policy. In support of its argument, General Accident contends that: (1) under the binder, GEICO was subject to the same terms and conditions that are contained in a GEICO policy; (2) Marcus Harris testified at his deposition that his wife replaced coverage on the 1984 Pontiac and the other vehicle under the General Accident policy with the GEICO binder in an attempt to pay a lower premium; and (3)

although Harris testified that he could not testify as to his wife's intentions, the Harrises did not intend to maintain double coverage on the 1984 Pontiac.

The parties agree that this case presents an issue of first impression in Kentucky. General Accident has cited several cases from other jurisdictions upholding and enforcing automatic termination clauses, but these cases are distinguishable from the case at bar because the subsequent insurer actually issued a policy providing coverage as opposed to a binder. *See Phillips v. Farmers Insurance of Columbus, Inc.,* No. 68187, 1995 Ohio App. LEXIS 2944 (8th App.Dist. Jul. 13, 1995) and 1995 WL 415247; *Stith v. Milwaukee Guardian Insurance, Inc.,* 44 Ohio App.3d 147, 541 N.E.2d 1071 (1988); and *Taxter v. Safeco Insurance Company of America,* 44 Wash.App. 121, 721 P.2d 972 (1986).

■ Under Kentucky law, a binder is "generally issued as a temporary arrangement to provide immediate coverage until a permanent policy can be obtained. By its very nature a binder contemplates temporary coverage which will cease when permanent coverage is obtained." *Travelers Insurance Co. v. Motorists Mutual Insurance Co.,* Ky. App., 649 S.W.2d 414, 415 (1982) *citing Potomac Insurance Co. v. Motorist Mutual Insurance Co.,* Ky.App., 598 S.W.2d 461, 463 (1979). *See also Cincinnati Insurance Company v. Clary,* Ky., 435 S.W.2d 88 (1968) (holding that binder is memorandum of agreement intended to give temporary protection pending investigation of risk and issuance of policy); and 43 Am.Jur.2d *Insurance* § 219 (1982). The Kentucky Legislature has also recognized the temporary nature of a binder under Kentucky Revised Statutes (KRS) 304.14–220, which provides in part, "[n]o binder shall be valid beyond the issuance of the policy with respect to which it was given, or beyond ninety (90) days from

---

2. Since we hold that the binder does not constitute other insurance for the purposes of the automatic termination provision, we need not address the issue of whether "similar" is ambiguous. Also, our holding makes the issue concerning stacking moot.

its effective date, whichever period is the shorter." KRS 304.14–220(2). Thus, a binder alone does not constitute an insurance policy; it is only an independent contract separate from the actual policy which is intended to provide temporary protection pending investigation of the risk by the insurer and until issuance of the policy by the insurer or rejection. *Ahern v. Dillenback*, 1 Cal.App.4th 36, 1 Cal.Rptr.2d 339, 346 (1991). *See also Couch on Insurance* § 13:1 (3d ed.1995–1996) (recognizing that binder is not an insurance policy). The sole purpose of a binder is to serve as evidence "that the policy has not yet been issued since the binder is effective until one of two events: the insurance application is rejected or the policy is issued." *Ahern*, 1 Cal.Rptr.2d at 346.

We agree with the trial court's reliance on *Northwestern Mutual Insurance Company v. Michaelson*, 322 F.2d 304 (9th Cir.1963) which, although not exactly on point with the case *sub judice*, dealt with an analogous situation. In *Michaelson*, the plaintiff owned a building which was insured by Northwestern. Northwestern notified its agent that it wanted to remove itself from the risk and cancel the policy. When the plaintiff's insurance agent was notified of Northwestern's desire to cancel the policy, he issued a binder for insurance coverage in the amount of $19,000 with another insurer. On July 16, 1963, the second insurer notified the plaintiff's agent in a letter that it would only accept $9,500 of the risk. After the binder was issued but before issuance of the permanent policy and before the Northwestern policy was canceled, the building was extensively damaged by fire. On July 17, 1963, after the loss of the building, notice of the second insurer's intent to accept only half of the risk was received by the plaintiff's agent. Northwestern denied liability under its policy on the ground that its policy was canceled by substitution of

the second insurance policy.[3] The Court disagreed, holding that:

> [w]e are unwilling to include within the principle of substitution a temporary binder where there is no showing that the new company for the projected term had unqualifiedly "bought" the risk and, indeed, [the new company] only accepted it conditionally and partially [before the fire], notice thereof being received after the fire.

*Michaelson*, 322 F.2d at 306. Like the *Michaelson* Court, we believe that the temporary nature of the binder forecloses termination of an existing policy by application of an automatic termination clause.

■■■ We also agree with the trial court that to allow an insurance binder to cancel a policy which is already in effect would be contrary to public policy as expressed by the Legislature. Under KRS 304.39–010, *et seq.*, all persons who operate a motor vehicle within the state are required to maintain insurance on that vehicle. Furthermore, KRS 304.99–060 provides substantial penalties for failure to maintain the coverage required by law. After issuing a binder, an insurer is under no duty to issue a policy or to accept full responsibility for the risk. Furthermore, the insured is under no duty to accept the permanent policy solely because a binder has been issued. If we were to hold that issuance of a binder allowed cancellation of a pre-existing policy pursuant to an automatic termination clause such as the one contained in the General Accident policy, the holder of the binder would be without any coverage whatsoever in the event that a permanent policy was not issued and thus would be in violation of Kentucky law and subject to criminal penalties.

General Accident argues that (1) public policy should not be a consideration in this case because the Harrises' coverage did not lapse; and (2) it should not be penalized in the event that its insureds decide to obtain insurance coverage from another company and allow their policy with General Accident

---

**3.** The case is silent as to whether the Northwestern policy contained an automatic termination clause.

to lapse. The fact that the coverage did not lapse in this case is not important from a public policy standpoint—the serious potential that coverage could lapse upon an insurer's decision not to issue a permanent policy or to issue a policy accepting only a portion of the risk is sufficient to support our decision.

The judgment of the Livingston Circuit Court is affirmed.

All concur.