Carol Jan SOLOMON, personal representative of the Estate of Vincent G. Solomon, Plaintiff–Appellant,

v.

NORTH AMERICAN LIFE AND CASUALTY INSURANCE COMPANY, Defendant–Appellee.

No. 97–55216.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 4, 1998.

Memorandum Decided June 29, 1998.

Order and Opinion Decided Aug. 11, 1998.

Sherril Nell Babcock, Gianelli & Morris, Los Angeles, California, for plaintiff-appellant.

**1134**

James R. Willcox, Thelen, Marrin, Johnson & Bridges, San Francisco, California, for defendant-appellee.

Before: FLETCHER, D.W. NELSON, and SILVERMAN, Circuit Judges.

### ORDER

The Memorandum disposition filed June 29, 1998 is redesignated as an authored Opinion by Judge Silverman, with minor modifications.

### OPINION

SILVERMAN, Circuit Judge:

Vincent G. Solomon ("Solomon"), the original appellant in this matter, died during the pendency of this appeal. By separate order, this Court has substituted as appellant Solomon's mother, Carol Solomon, personal representative of her son's estate. This appeal arises from the district court's entry of summary judgment in favor of Allianz Life Insurance Company of North America ("Allianz") on Solomon's state law claims for breach of contract, bad faith, breach of fiduciary duty, and fraud.[1] Solomon brought his action in California state court over three years after Allianz unilaterally terminated his life insurance policy; Allianz removed the action to federal court based upon diversity. Two weeks before the discovery deadline, Solomon sought to amend his complaint for a second time to include a claim of unfair business practices. The district court denied the motion because it was untimely and because Solomon failed to satisfy the pleading requirements.

Subsequently, Allianz moved for summary judgment on all of Solomon's claims. Concluding that Solomon's breach of contract and bad faith claims could not be established as a matter of law, and that Solomon's remaining claims were time-barred, the district

court granted Allianz's motion in its entirety. Solomon timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

In 1974, the "Professional and Executive Trust" was formed by three individuals unrelated to Allianz. The purpose of the trust was to obtain a group insurance policy for trust participants. In 1984, the trust applied for and was issued a group term life insurance policy by Allianz, policy number 7414.

After being solicited, Solomon became a participant of the trust in 1988 and was issued $100,000 of term life insurance under the group policy. Solomon was provided with a certificate of insurance evidencing his coverage under the master policy. Both the master policy and Solomon's certificate expressly provided several means by which a participant's coverage could be terminated. The master policy provided for termination on "Any Policy Anniversary Date, if [Allianz] gives 60 days advance written notice to the Policyholder [the trust]." Likewise, Solomon's certificate articulated that "the Group Policy may be changed or cancelled without the consent of any insured person and without prior notice to him."

In late 1991, Allianz decided to terminate the master policy because it was no longer profitable and was no longer being actively marketed. Solomon contends that the management of the trust never intended to provide long-term coverage, but instead marketed the policy solely for financial gain. On February 28, 1992, Allianz issued a letter to the trustee of the "Professional and Executive Trust," informing him of the termination of policy number 7414, among others, effective June 1, 1992. However, although mailed to the correct address, the letter was sent to the attention of the "Professional and Business Group Insurance Trust." Nevertheless, it is undisputed that the trustee of the "Professional and Executive Trust" received and correctly understood the notice.

---

1. Prior to 1993, Allianz was the North American Life and Casualty Company ("NALAC"). In this decision, we will refer to the insurance company as "Allianz."

Subsequently, the trustee of the "Professional and Executive Trust" sent all trust participants, including Solomon, notification of the group policy's termination in March of 1992. The letter discussed Solomon's conversion rights. Solomon testified that he, in fact, received the letter in March of 1992. Solomon testified that, after receiving the letter, he "felt used, misled ... [and] felt there was a breach of—there was something wrong here, something seriously wrong here." Solomon further testified that although he received the application to convert his policy, he did not apply for coverage because the application inquired as to whether he had AIDS or AIDS-related complex, which he did. The master policy terminated on June 1, 1992, as did all rights Solomon had under it.

Upon becoming gravely ill in early 1995, Solomon "viaticated" his other life insurance policies.[2] On December 5, 1995, Solomon brought the underlying action in California state court for breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duties, and fraud. The district court granted Allianz's motion for summary judgment as to all claims and denied Solomon's motion to amend.

## DISCUSSION

### I. SUMMARY JUDGMENT

■ We review the district court's grant of summary judgment de novo. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir.1996). This Court must determine, viewing the evidence in the light most favorable to Solomon, whether any genuine issues of material fact exist for trial and whether the district court correctly applied the relevant substantive law. *Id.*

### A. Breach of Contract Claim

Solomon contends that the district court erred in granting summary judgment on the contract claim for two reasons. First, according to Solomon, Allianz's unilateral termination constituted a breach because, he

says, the policy required mutual consent for termination. Even if the policy permitted unilateral termination, Solomon asserts that Allianz did not strictly follow the terms of the contract. Moreover, Solomon alleges that Allianz refused to comply with its conversion provision upon termination.

#### 1. Termination as a Breach

■ Although California construes ambiguous language in an insurance contract in favor of the insured, the terms must contain some ambiguity to trigger this rule of construction. *Hackethal v. National Cas. Co.*, 189 Cal.App.3d 1102, 1109, 234 Cal.Rptr. 853 (Cal.Ct.App.1987). Moreover, if the terms of an insurance contract are plain and unambiguous, the court has a duty to enforce the contract as agreed upon by the parties. *Id.* Specifically, applying California law, this court upheld the validity of an insurance contract that recognized the insurer's right of unilateral termination. *See Northwestern Mut. Ins. Co. v. Michaelson*, 322 F.2d 304, 305–06 (9th Cir.1963).

■ Here, the plain language of both the certificate and the master policy permits Allianz's unilateral termination of the policy. The master policy provides, in pertinent part, for termination on "Any Policy Anniversary Date, if [Allianz] gives 60 days advance written notice to the Policyholder." Likewise, the certificate states: "the Group Policy may be changed or cancelled without the consent of any insured person and without prior notice to him." Solomon's reliance on *Humphrey v. Equitable Life Assurance Soc'y of Amer.*, 67 Cal.2d 527, 63 Cal.Rptr. 50, 432 P.2d 746 (Cal.1967), for a contrary result is misplaced because there is no conflict or ambiguity between the certificate and the master policy.

■ Solomon next argues that if Allianz had the power to terminate, it did not comply strictly with the notice provisions in the master policy. Under California law, Allianz's unilateral termination is valid only if it strictly adhered to the contractual requirements.

---

**2.** Section 10113.1 of the California Insurance Code defines "viatical settlements" as "agreements entered into between a person owning a life insurance policy upon the life of a person with a catastrophic or life-threatening illness...."

*See Lee v. Industrial Indem.*, 177 Cal.App.3d 921, 924, 223 Cal.Rptr. 254 (Cal.Ct.App.1986). Here, the master policy provides that Allianz could terminate on "Any Policy Anniversary Date, if [Allianz] gives 60 days advance notice to the Policyholder [the Trust]." On February 28, 1992, Allianz issued a letter to the trustee of the "Professional and Executive Trust," informing him of the termination of policy number 7414, among others, effective June 1, 1992. The letter, however, was addressed to the "Professional and Business Group Insurance Trust"—not the "Professional and Executive Trust." Solomon contends that since the letter referred to the wrong trust, Allianz did not give proper notification, and thus canceled the wrong trust. Solomon asserts that this inaccurate reference violates the rule requiring strict compliance with the contract. We disagree.

The record demonstrates that the trust received adequate notice pursuant to the contract, even with the inaccurate reference. Solomon has produced no evidence to the contrary. Further, Allianz's contractual obligation to notify the master policyholder was owed to the trust, not to Solomon. Finally, it is undisputed that the termination letter correctly refers to policy number 7414, the same identification number that appears on Solomon's certificate. Accordingly, the district court properly concluded that Allianz's unilateral termination did not constitute a breach.

### 2. Failure to Convert as a Breach

■ Additionally, Solomon contends that Allianz breached by failing to follow the conversion provision in the policy. The provision provides:

> If the Member's insurance terminates because the Group Policy is terminated, or because it is amended to make him ineligible for insurance, the amount of the individual policy shall be the smaller of: (1) the difference between the Benefit Amount which ceased under the Group Policy, and the amount of any group life insurance for which he is or becomes eligible during the 31 days following termination of the Group Policy; or (2) $2,000.00
>
> * * * * * *

To get the new policy, a Member must make application and pay the first premium while his insurance under the Group Policy is in force or within 31 days of the date that his insurance terminates. The individual policy shall take effect upon the expiration of that 31-day period and shall be in lieu of all other Benefits under the Group Policy.

Without citation to the record, Solomon contends that Allianz refused to send him the conversion application and refused to inform him of the amount he should have remitted for his premium. However, Solomon's own deposition testimony contradicts that assertion:

Q: Did you ever fill out an enrollment form—

A: No.

* * * * * *

Q: What was your reason or reasons for not filling out the enrollment form, Exhibit 12?

A: It states right on here do you have AIDS or AIDS related complex? And by this time I knew I was HIV or ARC at the time.

There is no evidence that Solomon either attempted to comply with the conversion provision or was impeded by Allianz. Accordingly, we affirm the district court's entry of summary judgment.

### B. Breach of the Implied Covenant of Good Faith and Fair Dealing

■ Relying on *Kopczynski v. Prudential Ins. Co.*, 164 Cal.App.3d 846, 849, 211 Cal. Rptr. 12 (Cal.Ct.App.1985), the district court held that Solomon's bad faith claim was completely derivative of his contract claim, and thus was disposed of in like fashion. We agree. In *Kopczynski*, the court dismissed plaintiff's bad faith claim after it determined there was no underlying breach of contract. *Id.; see also California State Auto Ass'n Inter-Ins. Bureau v. Superior Court*, 184 Cal.App.3d 1428, 1434, 229 Cal.Rptr. 409 (Cal.Ct.App.1986) (refusing to examine plaintiff's bad faith claim because it was a dependent derivative of the contract claim).

Solomon contends that a breach of the underlying contract is not necessary to establish a bad faith claim. *See Carma Developers, Inc. v. Marathon Dev. California Inc.,* 2 Cal.4th 342, 373, 6 Cal.Rptr.2d 467, 826 P.2d 710 (Cal.1992). In *Carma,* the California Supreme Court expressly held that the breach of the underlying contract was not a prerequisite to establishing a bad faith claim. 2 Cal.4th at 373, 6 Cal.Rptr.2d 467, 826 P.2d 710. Bad faith may be established by a party's efforts to prevent the other party from enjoying the benefits of the contract. *Id.* However, *Carma* made equally clear that a party cannot be held liable on a bad faith claim for doing what is expressly permitted in the agreement. *Id.* at 374, 6 Cal.Rptr.2d 467, 826 P.2d 710. In *Carma,* a lessor's termination of a lease for financial gain was not a breach of the covenant of good faith and fair dealing because the contract expressly permitted such termination. *Id.* at 351–52, 6 Cal.Rptr.2d 467, 826 P.2d 710.

*Carma* does not undermine the district court's holding. Solomon's bad faith claim arises directly from Allianz's performance of the terms of the contract. As *Carma* recognized, parties can contract explicitly to engage in activities that might otherwise be forbidden by the implied covenant of good faith. *Id.* at 374, 2 Cal.4th 342, 826 P.2d 710. *Carma* involved a lease termination for financial gain. *Id.* Here, a unilateral termination of a life insurance policy was at issue. Both terminations were performed pursuant to the express terms of the contract. As such, both prohibit a bad faith claim as a matter of law. Moreover, Solomon has failed to put forth any evidence to support his allegations of bad faith, and an independent review of the record reveals no such evidence. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (holding that a plaintiff opposing a summary judgment motion must set forth specific facts demonstrating that there is a genuine issue for trial).

## C. Fraud and Breach of Fiduciary Duty Claims

The district court concluded that Solomon's fraud and breach of fiduciary duty claims were barred by the three-year statute of limitations. California Code of Civil Procedure ("CCP") § 338(d). Solomon does not dispute the applicability of the three-year statute of limitations, but contests the district court's analysis of when his time began to run.

### 1. Applicable Limitations Period [3]

■ Section 338(d) expressly provides a three-year limitation on "[a]n action for relief on the ground of fraud or mistake.... The cause of action in that case is not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." California also has a four-year general limitation on all actions not provided for in the other statutes. *See* CCP § 343.

■ In determining the controlling limitations period, California courts initially examine the nature of the cause of action. *See Krieger v. Nick Alexander Imports, Inc.,* 234 Cal.App.3d 205, 220, 285 Cal.Rptr. 717 (Cal.Ct.App.1991). If the claim arises out of a written contract, the four-year statute of limitation applies; when the gravamen of the complaint arises in tort, a two-year statute of limitation generally applies. *Id.* at 220–21, 285 Cal.Rptr. 717 (citing *Frazier v. Metropolitan Life Ins. Co.,* 169 Cal.App.3d 90, 214 Cal.Rptr. 883 (Cal.Ct.App.1985)). In cases where the claim sounds in both tort and contract, California permits the party to elect a remedy and applies the appropriate limitations period. *See Frazier,* 169 Cal.App.3d at 102, 214 Cal.Rptr. 883 (holding that plaintiff was entitled to four-year statute of limitations pursuant to CCP § 337 when suing for bad faith, if proceeding on a contract theory). Moreover, California courts have expressly held that claims for breach of fiduciary duty are governed by the four-year statute of limitations, pursuant to CCP § 343. *Stalberg v. Western Title Ins. Co.,* 230 Cal. App.3d 1223, 1230, 282 Cal.Rptr. 43 (Cal.Ct. App.1991); *Love v. Fire Ins. Exch.,* 221 Cal.

---

**3.** Although neither party contests the district court's application of the three-year statute of limitations to both the fraud and breach of fiduciary duty claims, we are obliged to review the applicability of the statute de novo.

App.3d 1136, 1144 n. 4, 271 Cal.Rptr. 246 (Cal.Ct.App.1990).

Here, the district court properly concluded that the three-year statute of limitations applied to Solomon's fraud action. Although neither side raised the applicability of the four-year statute of limitations, it governs Solomon's breach of fiduciary duty claim. The district court's conclusion to the contrary is erroneous.

### 2. Accrual

In ordinary tort and contract actions, the statute of limitations begins to run upon the occurrence of the last element necessary to the cause of action. *Krieger,* 234 Cal.App.3d at 221, 285 Cal.Rptr. 717. The discovery rule provides that a cause of action does not accrue until the plaintiff discovers, or reasonably should discover, the underlying facts to his cause of action. *See id.*

Allianz contends that in June of 1992, the date Solomon's policy was terminated, Solomon knew the facts underlying his causes of action. Moreover, in March of 1992, Solomon admitted that he received a letter informing him of the termination. Solomon testified that after receiving the letter, he "felt used, misled ... [and] felt there was a breach of—there was something wrong here, something seriously wrong here." Further, in March, Solomon contacted the state Department of Insurance to file a complaint against Allianz.

Solomon counters that he had not been damaged as of June of 1992; rather, he was damaged only when he viaticated his other policies and could not do so with his Allianz policy. Under Solomon's theory, the statute of limitations would not begin running on a claim arising out of a life insurance policy until the plaintiff died or attempted to viaticate. No authority supports this contention.

Solomon's action accrued when his policy was terminated. He could have initiated an action for specific performance or for the refund of his premiums. Therefore, because Solomon filed his complaint more than three years after the accrual of his claims, the district court correctly concluded that his

fraud claim was barred by the statute of limitations.

Moreover, although we hold that the four-year statute of limitations applies to Solomon's breach of fiduciary duty claim, we may affirm the district court's entry of summary judgment on an alternative ground supported by the record. *See Rosenbaum v. Hartford Fire Ins. Co.,* 104 F.3d 258, 259 (9th Cir.1996). In this case, Allianz owed no fiduciary duty to Solomon as a result of their insurer-insured relationship. *Henry v. Associated Indem. Corp.,* 217 Cal.App.3d 1405, 1418–19, 266 Cal.Rptr. 578 (Cal.Ct.App.1990); *see also Almon v. State Farm Fire & Cas. Co.,* 724 F.Supp. 765 (S.D.Cal.1989) (noting that California does not recognize an action for breach of fiduciary duty between an insured and insurer). Solomon offers no evidence to support his contention that Allianz owed him a fiduciary duty because it supposedly acted as a de facto trustee. Allianz did not create, operate, or control the trust, and Allianz did not perform any duties as trustee. Accordingly, because there is no evidence that Allianz and Solomon had a fiduciary relationship from which a fiduciary duty would flow, we affirm the district court on this alternative ground.

## II. DENIAL OF MOTION TO AMEND

Solomon sought to amend his complaint to add a new cause of action for unfair business practices under the *Business and Professions Code* § 17200 two weeks before the discovery deadline. The district court denied his motion for three reasons: "the Court finds that Plaintiff has not alleged the requisite element of 'on-going' conduct and thus fails to state a claim for which relief can be granted .... [the new claim] would not benefit this Plaintiff ... [and amendment] would result in undue delay and pose prejudice to the opposing party."

This court reviews the district court's denial of a motion to amend a complaint for an abuse of discretion. *Maljack Prods. v. GoodTimes Home Video Corp.,* 81 F.3d 881, 887–88 (9th Cir.1996). "Unless we have a definite and firm conviction that the district court committed a clear error of judgment, we will not disturb the district

court's decision." *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 809 (9th Cir.1988).

■ Initially, Solomon contends that the district court erred as a matter of law by failing to apply the correct elements for a § 17200 action. In August of 1992, the California legislature amended § 17200 to provide a cause of action for a single act of unfair business practices. *See* Appellant's Request for Judicial Notice; *see also* Appellee's Response to Appellant's Request for Judicial Notice. Prior to that, a party was required to prove ongoing unfair business practices in order to state a valid claim. *See California v. Texaco*, 46, Cal.3d 1147, 1169–70, 252 Cal.Rptr. 221, 762 P.2d 385 (Cal. 1988), *superseded by statute*, § 17200 (August, 1992).

Allianz maintains that since Solomon's claim under § 17200 accrued by June of 1992, the new legislation is not applicable because it is not retroactive. Solomon counters that the tense of the phrase "has engaged" indicates retroactivity, making the new provision applicable. The California Supreme Court has expressly held that legislation is presumed to operate prospectively and "in the absence of an express retroactivity provision, a statute will not be applied retroactively unless it is very clear from extrinsic sources that the Legislature or the voters must have intended a retroactive application." *Evangelatos v. Superior Court*, 44 Cal.3d 1188, 1209, 246 Cal.Rptr. 629, 753 P.2d 585 (Cal.1988).

The amendment to § 17200 has no retroactivity provision and there is nothing to indicate that the legislature intended a retroactive application. Further, California courts have suggested that the provision is not to be applied retroactively. *See Hewlett v. Squaw Valley Ski Corp.*, 54 Cal.App.4th 499, 518–19 n. 7, 63 Cal.Rptr.2d 118 (Cal.Ct.App.1997). Even adopting Solomon's analysis regarding the language "has engaged," that alone does not make "very clear" an intent of retroactivity. Thus, the district court did not err in applying the pre-August of 1992 provision. Further, under this provision, the court correctly concluded that Solomon failed to allege the required element of ongoing conduct.

■ The district court's conclusion that Solomon's motion to amend would cause undue delay and prejudice was not an abuse of discretion. Solomon made the motion on the eve of the discovery deadline. Allowing the motion would have required re-opening discovery, thus delaying the proceedings. The district court did not abuse its discretion in denying the motion to amend at that late date. Further, Solomon's pending motion for judicial notice of § 17200, as amended in August of 1992, and the history thereof is DENIED.

The judgment of the district court is **AFFIRMED**.