NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

JAN 23 2026

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

KIMBERLY R. SWEIDY,

Plaintiff - Appellant,

v.

SPRING RIDGE ACADEMY, an Arizona corporation; JEAN COURTNEY; SUZANNE COURTNEY; BRANDON COURTNEY; ERIN SMITH; LESLIE FILSINGER; JUSTIN ZYCH; KATE DEILY; and VERONICA BORGES,

Defendants - Appellees.

No. 24-4318

D.C. No.
3:21-cv-08013-SPL

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Arizona
Steven Paul Logan, District Judge, Presiding

Argued and Submitted January 5, 2026
Phoenix, Arizona

Before: HAWKINS, RAWLINSON, and M. SMITH, Circuit Judges.
Concurrence by Judge RAWLINSON.

Plaintiff-Appellant Kimberly R. Sweidy (Sweidy) brought this suit against

Spring Ridge Academy (SRA) and eight of its individual employees (collectively,

---

[*]   This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Defendants) for claims related to her daughter, René Rearden Sweidy Stata (Rearden), and Rearden's enrollment at SRA. Sweidy appeals an order striking her statements of controverting facts and associated exhibits, and an order denying her motion to amend her complaint. Sweidy also challenges the partial summary judgment dismissal of her causes of action for (i) intentional infliction of emotional distress; (ii) breach of contract/breach of warranty; (iii) breach of the covenant of good faith and fair dealing; (iv) negligence per se; (v) actual and constructive fraud; (vi) consumer fraud; and (vii) conversion.[1,2] We have jurisdiction pursuant to 28 U.S.C. § 1291.[3] Because the parties are familiar with the facts, we do not recount them here except as necessary. We affirm.

1. "We review a district court's ruling on a motion to strike for abuse of discretion." *Ehart v. Lahaina Divers, Inc.*, 92 F.4th 844, 849 (9th Cir. 2024). The district court did not abuse its discretion by striking Sweidy's statements of controverting facts or her supporting exhibits for noncompliance with the page limits in its case management order. *See, e.g.*, *Green v. California Ct. Apartments LLC*,

---

[1] The only remaining claims were fraud claims against SRA and SRA's Admissions Director, Kate Deily (Deily).

[2] The district court also dismissed Sweidy's claim pursuant to the Racketeer Influenced and Corrupt Organization Act, but she makes no argument challenging that on appeal.

[3] Generally, "[o]rders granting partial summary judgment are not final appealable orders." *Jones v. McDaniel*, 717 F.3d 1062, 1068 (9th Cir. 2013) (internal quotation omitted). But Sweidy appeals the district court's grant of partial judgment based on a final judgment entered pursuant to Federal Rule of Civil Procedure 54(b).

321 F. App'x 589, 591 (9th Cir. 2009).  Sweidy could have filed a motion to exceed these limits, but she did not do so.  Even if it were error, it was harmless because the district court expressly stated in its summary judgment order that it considered the exhibits at that stage.

2.     We also review a district court's denial of a motion to amend a complaint for abuse of discretion.  *See Solomon v. N. Am. Life & Cas. Ins. Co.*, 151 F.3d 1132, 1138 (9th Cir. 1998).  Sweidy moved to amend her complaint to create "a clarified, reorganized, solidified, and expanded First Amended Complaint" based on "additional information" learned during discovery and through subsequent research.  The district court did not abuse its discretion by denying Sweidy's motion.  We have previously affirmed denials of such motions that are filed (as here) at a late stage in the litigation based on needless delay and prejudice.  *See, e.g.*, *Lamon v. Ellis*, 584 F. App'x 514, 516 (9th Cir. 2014).  Any error here was harmless because Sweidy was able to point to relevant evidence in her summary judgment briefing and at trial, including evidence related to punitive damages.

3.     The district court did not err by granting summary judgment on Sweidy's claim for intentional infliction of emotional distress (IIED).[4]  We review

---

[4] Summary judgment is warranted if the movant establishes that there is no genuine dispute of material fact, entitling it to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a).  A genuine fact dispute exists where there is sufficient evidence for a reasonable jury to find in favor of the nonmoving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).  We view the facts in the light most

3                                                                      24-4318

grants of partial summary judgment de novo. *See Washington Mut. Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). In Arizona, IIED requires: (i) "extreme and outrageous" conduct; (ii) "inten[t] to cause emotional distress or reckless[] disregard" for "the near certainty that such distress will result"; and (iii) "severe emotional distress . . . as a result of defendant's conduct." *Ford v. Revlon, Inc.*, 734 P.2d 580, 585 (Ariz. 1987) (en banc) (internal quotation omitted). Here, Sweidy's IIED claim fails because she offers no evidence of severe emotional distress.

Moreover, Sweidy's own arguments defeat her claim. According to Sweidy, Defendants' alleged conduct "inherently" causes severe emotional distress in all parents, so she "was not required to show proof of [her distress]" and "certainly not at the summary judgment stage." But proof of severe emotional distress is necessary to establish the third element of an IIED claim. Sweidy's "inherent distress" argument asks us to collapse the first and third elements. Sweidy's failure to identify any evidence of her severe emotional distress is fatal to her claim, especially where she herself has expressed a lack of such distress. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) ("Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits . . . designate specific facts showing that there is a genuine issue for trial." (internal quotation omitted)).

---

favorable to the nonmovant and draw all reasonable inferences in their favor. *See id.* at 255.

4.     The district court also did not err by granting summary judgment on Sweidy's breach of contract claim.[5] We first decline to expand the parties' contract beyond the Enrollment Agreement and Parent Manual, because Sweidy does not persuasively explain why we should do so. The Enrollment Agreement describes SRA as "a clinical boarding school for adolescents" that "combines a clinically sophisticated therapeutic program with a college preparatory academic curriculum." Before the district court, Sweidy argued that Defendants failed to "act within the scope of the authority granted in the Enrollment Agreement and the Parent Manual and not beyond the represented services, which included providing family therapy." Like the district court, we disagree. *See Collins v. Miller & Miller, Ltd.*, 943 P.2d 747, 755 (Ariz. Ct. App. 1996) (breach of contract claim requires specificity beyond "a general promise . . . to provide reasonably competent [] services.").

We do not address Sweidy's more specific arguments raised on appeal because they are waived for failure to develop below. *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010). Sweidy argues that there is no waiver because these arguments were alleged in her complaint. This is insufficient. *See Coverdell v. Dep't of Soc. & Health Servs.*, 834 F.2d 758, 769 (9th Cir. 1987) (at summary judgment, "[t]he nonmoving party may not rely merely on the

---

[5] Sweidy does not appeal the grant of summary judgment for breach of contract with respect to Defendants other than SRA.

unsupported or conclusory allegations of her pleadings"). Sweidy highlights that her complaint is verified, but that does not transform it into a brief, nor does it transform allegations into evidence if they are insufficiently specific or not based on personal knowledge. *See Moran v. Selig*, 447 F.3d 748, 759 n.16 (9th Cir. 2006). Regardless, even if we considered Sweidy's more specific arguments on the merits, we would still conclude that she has failed to raise a genuine dispute regarding her breach of contract claim. These arguments are based on only general promises and are otherwise unsupported.

5. We next hold that the district court did not err by granting summary judgment on Sweidy's claim for breach of the implied covenant of good faith and fair dealing. "A party breaches the covenant by exercising express discretion in a way inconsistent with a party's reasonable expectations and by acting in ways . . . which . . . bear adversely on the party's reasonably expected benefits of the bargain." *Keg Rests. Arizona, Inc. v. Jones*, 375 P.3d 1173, 1186 (Ariz. Ct. App. 2016) (internal quotation omitted). Sweidy argues that even if SRA's alleged actions (failure to provide licensed therapy and evidence-based treatment) were not expressly contemplated by the contract, they bear adversely on her reasonably expected benefits of the bargain.[6]

---

[6] Sweidy does not challenge summary judgment on this claim related to other Defendants except SRA.

We reject Sweidy's argument. Sweidy's claim is based in tort, not contract, and thus, relies on whether SRA complied with the applicable standard of care. Sweidy failed to develop and support her argument. For example, while the record below included expert reports that Sweidy might have used to support her claims, she failed to cite them in her opposition brief.

For the first time on appeal, Sweidy argues that "SRA actively prevented [her] and Rearden from receiving the benefits" of the family program, and "impeded" family enhancement by "actively preventing her from contacting or visiting Rearden." We find these arguments to be waived, but even if they were not, we would affirm. Sweidy offers no evidence that Defendants "impeded" family services. Rather, the record suggests that it was Sweidy who rejected these services.

6. Nor did the district court err by granting summary judgment on Sweidy's negligence per se claim. In Arizona, negligence per se requires "a valid statute, enacted for the public safety," which "provide[s] that a certain thing must or must not be done," and "a failure to comply with the regulations [that] is the proximate cause of injury to another." *Griffith v. Valley of Sun Recovery & Adjustment Bureau, Inc.*, 613 P.2d 1283, 1285 (Ariz. Ct. App. 1980) (internal quotation omitted). Sweidy's argument before the district court focused almost entirely on her claim pursuant to A.R.S. § 13-1302 (custodial interference), although she also referenced her allegations that Defendants "breach[ed] their duties to

provide therapy and communication in compliance with the Arizona Administrative code governing behavioral health facilities."[7] On appeal, Sweidy clarifies that her negligence per se claims are brought pursuant to A.R.S. § 13-1302, A.R.S. § 32-3283 and A.A.C. § R4-6-1105 (confidentiality), and A.A.C. §§ R9-10-707(A), R9-10-708, and R9-10-712 (operational standards for Behavioral Health Residential Facilities).

We reject Sweidy's arguments. Even assuming that it was enacted for public safety, A.R.S. § 13-1302 does not proscribe sufficiently specific acts for negligence per se liability. Its requirement that the person "know[] or hav[e] reason to know that the person has no legal right to [act]," A.R.S. § 13-1302(A), would necessarily require an "inquiry into the circumstances or reasonableness." *Griffith*, 613 P.2d at 229 (internal quotation omitted). Here, evaluating the merits of that claim would require interpretation of the Family Court's order.

We similarly reject Sweidy's arguments pursuant to A.R.S. § 32-3283 and A.A.C. § R4-6-1105. According to Sweidy, SRA and other Defendants disclosed or failed to prevent the disclosure of Sweidy's "protected documents" to her ex-husband, which he filed publicly. Again, even assuming that these provisions are

---

[7] According to Sweidy, Defendants did not move for summary judgment on her claims related to the Arizona Administrative Code, and the district court erred in granting relief that was not requested. But Defendants sought judgment "on all claims," and argued that "[Sweidy] cannot maintain a cause of action . . . for negligence *per se*" based on the legal provisions identified in the complaint.

intended to protect the public, Sweidy offers no evidence that Defendants had anything to do with her ex-husband's decision to publicly file the documents. And to the extent that Defendants provided information to him, Sweidy does not offer evidence that these documents were "received by reason of the confidential nature of the behavioral health professional-client relationship." A.R.S. § 32-3283(A). These may be sensitive documents, but that does not mean that they implicate the cited statute and regulation, especially because Sweidy does not point to evidence that they were submitted by Sweidy to a behavioral health professional "by reason of the confidential nature of [that] relationship."

We also reject Sweidy's arguments pursuant to A.A.C. §§ R9-10-707(A), R9-10-708, and R9-10-712. Sweidy merely supports them with conclusory allegations in her complaint.

7. The district court did not err by dismissing, except as to SRA and Deily (SRA's Admissions Director),[8] Sweidy's claims for actual and constructive common law fraud and consumer fraud pursuant to the Arizona Consumer Fraud Act (ACFA), A.R.S. § 44-1522(A), which are all based on the same alleged conduct. Common law fraud requires a false representation, known to be false, intended to be relied

---

[8] The case proceeded to a jury trial on Sweidy's pre-enrollment fraud claims against SRA and Deily, which were the only claims to survive summary judgment. The district court entered a verdict in Sweidy's favor. However, the district court subsequently granted Defendants' motion for a new trial, leaving the fraud claims unresolved below.

upon, which the hearer actually relies upon to their detriment. *See Taeger v. Catholic Fam. and Cmty. Servs.*, 995 P.2d 721, 730 (Ariz. Ct. App. 1999). Constructive fraud does not require intent to deceive where there is a relationship of trust and confidence. *See Rhoads v. Harvey Publ'ns, Inc.*, 700 P.2d 840, 846–47 (Ariz. Ct. App. 1984). Consumer fraud pursuant to the ACFA requires concealment of material information in connection with the sale or advertisement of merchandise, which includes services. *See* A.R.S. § 44-1522(A); *Parks v. Macro-Dynamics, Inc.*, 591 P.2d 1005, 1008 (Ariz. Ct. App. 1979).

First, we decline to address Sweidy's argument, raised for the first time on appeal, that Jean, Brandon, and Suzanne Courtney, who "authored, published, and maintained" the Parent Manual, misrepresented SRA pre-enrollment as an "environment where students develop and practice effective emotional, relational, physical, and creative skills" and concealed that it was otherwise.

We also reject Sweidy's arguments related to alleged pre-enrollment representations and concealment by the other Defendants. She argues that the Courtneys, Filsinger, and Borges misrepresented and failed to disclose that certain mandatory workshops "were based on Lifespring's abusive and coercive seminars." But Sweidy offers no particularized evidence that any of them made pre-enrollment misrepresentations. She also offers no particularized evidence that Defendants (except for Jean Courtney, who admitted in her deposition that she knew Lifespring

was subject to multiple lawsuits) considered the workshops to be "abusive" or "coercive," or lack evidence, much less concealed their nature from Sweidy.

We also affirm as to Sweidy's claims asserting post-enrollment misrepresentations and concealment. Sweidy has failed to offer evidence of economic damages: the evidence suggests that Sweidy's ex-husband, not Sweidy, was responsible for paying Rearden's tuition.[9] Sweidy nevertheless insists that she "paid for [Rearden]'s tuition in her compromises and negotiations that resulted in" her custody and support agreements. She offers no evidence to support her self-serving statement, and plaintiffs in Arizona cannot recover on a fraud claim for emotional distress alone. *See, e.g.*, *Echols v. Beauty Built Homes, Inc.*, 647 P.2d 629, 632 (Ariz. 1982).[10]

8.     Last, the district court did not err in dismissing Sweidy's conversion claim. "Conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may

---

[9] Sweidy's exhibits show her calculated "damages," including attorneys' fees, experts' fees, lodging and travel, and dog boarding. But she does not connect them to the alleged fraud or explain why they are actionable damages. *See U.S. Fid. & Guar. Co. v. Frohmiller*, 227 P.2d 1007, 1009 (Ariz. 1951) ("Generally, the tendency of the courts is not to extend the meaning of 'damages' to include such elements as attorneys' fees."). We decline to address Sweidy's untimely argument that parents are entitled to a presumption of pecuniary damages for the loss of their child's society.

[10] While there may be an inconsistency in the district court's order dismissing post-enrollment fraud claims—but not pre-enrollment fraud claims—for lack of damages, we do not address the surviving pre-enrollment claims at this time.

justly be required to pay the other the full value of the chattel." *Miller v. Hehlen*, 104 P.3d 193, 203 (Ariz. Ct. App. 2005) (internal quotation omitted). Sweidy has failed to provide evidence demonstrating that Borges personally exercised control over the personal property at issue. Nor does she refer to any evidence that Defendants seriously interfered with her property rights. In her deposition, Sweidy refused to answer questions about the property, including whether she would have sent the property to Rearden had SRA sent it to Sweidy first.

Accordingly, we affirm the summary judgment dismissal of Sweidy's claims for intentional infliction of emotional distress, breach of contract, breach of the covenant of good faith and fair dealing, negligence per se, and conversion. We also affirm the dismissal of Sweidy's fraud claims against Defendants other than SRA and Deily. Because we do not address Sweidy's surviving fraud claims against SRA and Deily, those claims should proceed below.

**AFFIRMED.**



***Sweidy v. Spring Ridge Academy*, Case No. 24-4318**
**Rawlinson, Circuit Judge, concurring in the result:**

I concur in the result.

1